UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KHALID MOHAMMAD THEEB AHMAD; and MARIAM IHSAN KERGAYE, <br><br> Plaintiffs, <br> v. <br><br> KRISTI NOEM, in her official capacity as the United States Secretary of Homeland Security; UR M. JADDOU, in her official capacity as the Director of U.S. Citizenship and Immigration Services; TRACY TARANGO, in her official capacity as the U.S. Citizenship and Immigration Services Director of the California Service Center; and PAMELA BONDI, in her official capacity as the U.S. Attorney General, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. NO. 35)** <br><br><br> Case No. 2:24-cv-00083 <br><br> Magistrate Judge Daphne A. Oberg |

In this action, Khalid Mohammed Theeb Ahmad and his wife, Mariam Ihsan Kergaye, challenge a decision by the United States Citizenship and Immigration Services ("USCIS") denying Mr. Ahmad's application for waiver of a statutory visa requirement.[1] They bring claims under the Administrative Procedure Act[2] ("APA"), the Mandamus Act,[3] and the Fifth Amendment's due process clause.[4]

---

[1] (*See* Compl. for Writ of Mandamus and Compl. Under Admin. Proc. Act ("Compl."), Doc. No. 1.)

[2] 5 U.S.C. §§ 551–559.

[3] 28 U.S.C. § 1361.

[4] (*See* Compl. ¶¶ 7, 103–23, Doc. No. 1.)

Defendants Alejandro Majorkas, Ur M. Jaddou, Tracy Tarango, and Merrick B. Garland[5] have moved to dismiss this action for lack of subject-matter jurisdiction and failure to state a claim.[6]  Mr. Ahmad and Ms. Kergaye oppose the motion.[7]  As explained below, a jurisdiction-stripping provision of the Immigration and Nationality Act[8] bars this court from reviewing the denial of Mr. Ahmad's waiver application.  Because all pending claims seek such review, the court lacks subject-matter jurisdiction over all claims.  Accordingly, Defendants' motion is granted, and the case is dismissed without prejudice.[9]

## BACKGROUND

Mr. Ahmad, a citizen of Jordan, entered the United States on a J-1 student visa in 2014.[10]  Mr. Ahmad married Ms. Kergaye (a United States citizen) in 2019.[11]  Under

---

[5] The defendants are government officials sued in their official capacities.  To the extent any of these named defendants no longer hold office, their successors are automatically substituted as defendants.  *See* Fed. R. Civ. P. 25(d).  Based on currently available information, Kristi Noem is substituted for Alejandro Majorkas, and Pamela Bondi is substituted for Merrick B. Garland.

[6] (Defs.' Mot. to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Mot."), Doc. No. 35.)

[7] (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Opp'n"), Doc. No. 41.)

[8] 8 U.S.C. §§ 1101–1537.

[9] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 19.)

[10] (Compl. ¶¶ 11, 22, Doc. No. 1.)

[11] (*Id.* ¶ 24.)

his J-1 visa, Mr. Ahmad is subject to a two-year foreign residence requirement.[12]  This prohibits him from applying for permanent resident status until he has returned to his home country for two years or obtained a waiver.[13]

Mr. Ahmad applied for a waiver of the two-year foreign residence requirement in August 2022 by submitting a Form I-612 to the USCIS California Service Center.[14]  He sought a waiver based on a "well-founded fear of persecution upon return to Jordan."[15] Specifically, Mr. Ahmad alleged he would face persecution based on race (as a Jordanian of Palestinian origin) and political opinion (due to his opposition to the Jordanian government).[16]  USCIS denied Mr. Ahmad's waiver application in November 2023, finding he failed to establish he would be persecuted upon return to Jordan.[17]  Mr. Ahmad and Ms. Kergaye allege "USCIS must have abused its discretion in evaluating Mr. Ahmad's waiver application, because it could not have come to its negative conclusion through a correct process of reasoned decision-making."[18]

Mr. Ahmad and Ms. Kergaye group their claims into four "counts": (1) abuse of discretion and violation of the APA; (2) violation of due process under the Fifth

---

[12] (*Id.* ¶¶ 17–19.)

[13] (*Id.* ¶¶ 17–18.)

[14] (*Id.* ¶¶ 20, 35.)

[15] (*Id.* ¶¶ 20.)

[16] (*See id.* ¶¶ 12–13, 37.)

[17] (*Id.* ¶ 66, 94.)

[18] (*Id.* ¶ 15.)  In the complaint, Mr. Ahmad and Ms. Kergaye set forth detailed allegations as to why the denial was erroneous.  (*See id.* ¶¶ 67–98.)

Amendment, based on Mr. Ahmad's property interest in the application fee; (3) failure to provide a reasoned analysis describing a marked change in policy in the adjudication of I-612 persecution waiver cases; and (4) declaratory judgment.[19]  They also cite the Mandamus Act[20] as a basis for subject-matter jurisdiction.

Mr. Ahmad and Ms. Kergaye seek (1) a declaration that Defendants' adjudication of Mr. Ahmad's waiver application was "in violation of the statute, regulations, legislative intent, agency procedures, and the Constitution"; (2) a declaration that Mr. Ahmad is statutorily eligible for a waiver under 8 U.S.C. § 1182(e); (3) a declaration that Defendants' denial of Mr. Ahmad's waiver application was "unlawful, arbitrary and capricious; contrary to the statute, regulations, legislative history, and congressional intent; and in violation of the Constitution"; (4) a declaration that Mr. Ahmad's waiver application is meritorious and should be approved; (5) an order requiring Defendants to "reverse the denial of the waiver application, issue a favorable recommendation on the application by generating an I-613, and forward the case to the State Department Waiver Review Division to seek its recommendation on the waiver application"; and (6) an award of attorney's fees and costs.[21]

---

[19] (*Id.* ¶¶ 103–23, Doc. No. 1.)

[20] 28 U.S.C. § 1361.

[21] (Compl., Prayer for Relief, Doc. No. 1 at 43–44.)

Defendants filed a motion to dismiss the complaint for lack of jurisdiction and failure to state a claim.[22]  Mr. Ahmad and Ms. Kergaye filed an opposition,[23] and Defendants filed a reply.[24]

## LEGAL STANDARDS

Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction.[25]  A motion to dismiss under Rule 12(b)(1) may take one of two forms.[26]  "A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[27]  "A factual attack, on the other hand, goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[28]  Where Defendants base their jurisdictional arguments solely on the allegations in the complaint and a policy manual subject to judicial notice, the motion presents a facial attack.

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[29]  To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough

---

[22] (Mot., Doc. No. 35.)

[23] (Opp'n, Doc. No. 41.)

[24] (Defs.' Reply in Supp. of Mot. to Dismiss for Lack of Jurisdiction and Failure to State a Claim, Doc. No. 44.)

[25] Fed. R. Civ. P. 12(b)(1).

[26] *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012).

[27] *Id.* (internal quotation marks omitted).

[28] *Id.* (internal quotation marks omitted).

[29] Fed. R. Civ. P. 12(b)(6).

facts to state a claim to relief that is plausible on its face."[30]  The court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.[31]  However, the court need not accept a plaintiff's conclusory allegations as true.[32]

Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss under Rule 12(b)(6) "must be treated as one for summary judgment under Rule 56."[33]  But materials subject to judicial notice may be considered without converting a dismissal motion to a motion for summary judgment.[34]  Here, both parties reference a USCIS policy manual available on USCIS's website.[35]  Where this document is published on a government agency's website, the court takes judicial notice of it.[36]  Mr. Ahmad and Ms. Kergaye also submitted an exhibit with their opposition containing a USCIS procedures manual, which their counsel obtained via a public records request.[37]  This exhibit is not considered because the

---

[30] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[31] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[32] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[33] Fed. R. Civ. P. 12(d).

[34] *See Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished).

[35] (*See* Mot. 5–7, Doc. No. 35; Opp'n 15–16, Doc. No. 41.)

[36] *See Rahimian v. Blinken*, No. 22-785, 2023 U.S. Dist. LEXIS 4406, at *5 (D.D.C. Jan. 10, 2023) (unpublished) ("The Court may take judicial notice of information posted on official public websites of government agencies.").

[37] (*See* Ex. 1 to Opp'n, Doc. No. 41-1; *see also* Opp'n 15 n.15, Doc. No. 41.)

motion to dismiss is granted on other grounds.[38]  Accordingly, the motion to dismiss

need not be converted to a motion for summary judgment.

**ANALYSIS**

Defendants argue the court lacks subject-matter jurisdiction over Mr. Ahmad and

Ms. Kergaye's APA and due process claims because the Immigration and Nationality

Act ("INA") strips this court of jurisdiction to review USCIS's denial of Mr. Ahmad's

waiver application.[39]  Defendants also contend the INA and "the inherent discretionary

nature of USCIS's decision" bar the court from issuing a writ under the Mandamus

Act.[40]  Finally, Defendants argue that even if jurisdiction exists, Mr. Ahmad and Ms.

Kergaye fail to state a plausible claim for relief under the APA, the due process clause,

or the Mandamus Act.[41]  Each claim is addressed in turn.

A.  APA Claim for Review of Denial of Mr. Ahmad's Waiver Application (Count 1)

Defendants argue the court lacks jurisdiction over Mr. Ahmad's APA claim

seeking review of USCIS's denial of his visa waiver application for two reasons: (1)

section 1252(a)(2)(B)(ii) of the INA precludes judicial review of decisions expressly

committed to the discretion of the Secretary of Homeland Security, which Defendants

---

[38] Specifically, Mr. Ahmad and Ms. Kergaye cite the procedures manual in support of their argument that 8 U.S.C. § 1182(e) provides a meaningful standard for judicial review of visa waiver applications under the APA.  (*See* Opp'n 15–16, Doc. No. 41.)  As explained below, this issue is not addressed because the court lacks jurisdiction to review the denial of Mr. Ahmad's application, pursuant to the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B)(ii).

[39] (Mot. 2, Doc. No. 35.)

[40] (*Id.*)

[41] (*Id.*)

contend includes denial of the waiver application at issue here; and (2) section 1182(e) of the INA provides no meaningful standard against which to review USCIS's decision.[42] In response to the first argument, Mr. Ahmad and Ms. Kergaye contend the INA's jurisdiction-stripping provision does not apply to USCIS's decision to deny Mr. Amad's waiver application because it was a "first-step nondiscretionary eligibility decision."[43] But Defendants' argument on this point is correct.  And where § 1252(a)(2)(B)(ii) bars review of USCIS's denial of Mr. Ahmad's waiver application (as explained below), Defendants' second argument need not be addressed.

### 1.  Statutory and Regulatory Framework

The APA provides that a person "adversely affected or aggrieved by agency action" is "entitled to judicial review thereof."[44]  But by its own terms, the APA review provision does not apply to the extent "statutes preclude judicial review."[45]  Courts employ a presumption that Congress intends judicial review of administrative action, including in the immigration context.[46]  But a party may "dislodge the presumption" with clear and convincing evidence.[47]

Section 1252(a)(2)(B) of the INA contains a jurisdiction-stripping provision which provides, as relevant here:

---

[42] (*Id.* at 9.)

[43] (Opp'n 2, Doc. No. 41.)

[44] 5 U.S.C. § 702.

[45] 5 U.S.C. § 701(a)(1).

[46] *Kucana v. Holder*, 558 U.S. 233, 251 (2010).

[47] *Id.* at 252.

Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under [8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c, or 1255], or

(ii) *any other decision or action* of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this title* [8 U.S.C. §§ 1151 et seq.] *to be in the discretion* of the Attorney General or the Secretary of Homeland Security, other than [relief regarding asylum].[48]

Section 1182(e) of the INA governs waiver of the two-year foreign residence requirement.[49]  As relevant here, this section provides: "[U]pon the favorable recommendation of  . . . [the Secretary of Homeland Security, through USCIS] after [s]he has determined . . . that the alien cannot return to the country of his nationality or last residence because he would be subject to persecution on account of race, religion, or political opinion, the [Secretary of Homeland Security] *may* waive" the two-year foreign residence requirement "in the case of any alien whose admission to the United States is found by the [the Secretary of Homeland Security] to be in the public interest."[50]

Adjudication of a Form I-162 waiver application under § 1182(e) typically happens in three steps.  First, USCIS decides whether the applicant would be subject to

---

[48] 8 U.S.C. § 1252(a)(2)(B) (emphasis added).

[49] 8 U.S.C. § 1182.

[50] 8 U.S.C. § 1182(e) (emphasis added).  The INA refers to the agency decisionmakers as the "Commissioner of Immigration and Naturalization" and the "Attorney General" rather than the Secretary of Homeland Security.  *Id.*  As Defendants explain in their motion, these decisions are now within the purview of the Secretary of Homeland Security (with a delegation to USCIS at the first step) per subsequent legislation and agency regulations.  (*See* Mot. 4–6, Doc. No. 35.)  Mr. Ahmad and Ms. Kergaye do not dispute this.

persecution if he were to return to his home country.[51]  If USCIS agrees with the applicant, it transmits a favorable recommendation to the Waiver Review Division ("WRD") in the Department of State's Bureau of Consular Affairs.[52]  The WRD then reviews "the program, policy, and foreign relations aspects of the case" and returns a recommendation to the Department of Homeland Security.[53]  After WRD responds, USCIS grants or denies the waiver based on WRD's recommendation.[54]  This three-step process is not set forth in the INA.  Here, Mr. Ahmad's waiver application was denied by USCIS at the first step of this process; USCIS did not forward his application to the Department of State.[55]

     *2.  Analysis*

Defendants argue the Secretary has sole discretion to waive the residence requirement under § 1182(e) if she deems a waiver to be in the public interest.[56]  Defendants contend the word "may" in the statute "creates a presumption of discretion under normal rules of statutory interpretation," in contrast with the mandatory "shall."[57]

---

[51] 8 C.F.R. § 212.7(c)(5); 22 C.F.R. § 41.63(b)(1).

[52] 22 C.F.R. § 41.63(b)(2)(i).

[53] 22 C.F.R. § 41.63(b)(2)(iii).

[54] USCIS Policy Manual vol. 2 pt. D ch. 4 § C, https://www.uscis.gov/policy-manual/volume-2-part-d-chapter-4#footnotelink-21 [https://perma.cc/6VUD-6FB4].

[55] (*See* Compl. ¶ 21, Doc. No. 1.)

[56] (Mot. 10, Doc. No. 35.)

[57] (*Id.* (quoting *Mukantagara v. Mayorkas*, 736 F. Supp. 3d 1117, 1226 (D. Utah 2024)).)  *Mukantagara* did not address a J-1 foreign residence waiver application; it addressed whether the INA's jurisdiction-stripping provision precluded review of USCIS's decision to terminate the plaintiff's refugee status.  736 F. Supp. 3d at 1226.

Even though the word "may" is not used in relation to the first step of the review process (USCIS's determination whether the applicant would be subject to persecution if he were to return to his home country), Defendants argue such a decision is still discretionary because a waiver is not guaranteed even were USCIS to find persecution.[58]  In other words, Defendants contend the fact that the denial occurred at the first step of review does not change the analysis.[59]  Alternatively, Defendants argue that even if USCIS's initial persecution decision could be classified as nondiscretionary (or purely factual), § 1252(a)(2)(B)(ii) still precludes judicial review[60] under the Supreme Court's decision in *Patel v. Garland*.[61]

Mr. Ahmad and Ms. Kergaye, on the other hand, argue the INA's jurisdiction-stripping provision does not apply because USCIS's decision to deny Mr. Amad's waiver application was a "first-step nondiscretionary eligibility decision."[62]  Mr. Ahmad and Ms. Kergaye contend such decisions are reviewable under the Supreme Court's decision in *Kucana v. Holder*.[63]

In *Kucana*, the Supreme Court held § 1252(a)(2)(B)(ii) only strips courts of jurisdiction for decisions or actions made discretionary by statute—not by agency

---

[58] (Mot. 10, Doc. No. 35.)

[59] (*Id.*)

[60] (*Id.* at 11–13.)

[61] 596 U.S. 328 (2022).

[62] (Opp'n 2, Doc. No. 41.)

[63] 558 U.S. 233 (2010).

regulations.[64]  The Court specifically rejected the notion that the Attorney General could unilaterally create discretion in immigration decisions by labeling them as discretionary in agency regulations.[65]  As the *Kucana* Court observed, § 1252(a)(2)(B)(ii) "speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion."[66]  Applying *Kucana* to § 1182(e), Mr. Ahmad and Ms. Kergaye argue the discretionary language in the statute (stating the Secretary "may waive" the foreign residence requirement) applies only to step three of the waiver determination.[67] They contend that where the first step described in § 1182(e) does not employ discretionary language, USCIS's determination at the first step is nondiscretionary.[68]

In *Patel*,[69] the Supreme Court addressed § 1252(a)(2)(B)(i), another jurisdiction-stripping provision in the INA.  This provision prohibits judicial review of "any judgment regarding the granting of relief under" specified subsections of the INA, including § 1255 (adjustment of status).[70]  The plaintiffs in *Patel* sought review of an immigration judge's denial of Mr. Patel's application for adjustment of status—specifically challenging the judge's factual determination that Mr. Patel had not made an honest mistake when he

---

[64] *Id.* at 252–53.

[65] *See id.* at 248.

[66] *Id.* at 243 n.10.

[67] (Opp'n 8, Doc. No. 41.)

[68] (*Id.*)

[69] 596 U.S. 328.

[70] 8 US.C. § 1252(a)(2)(B)(i).

misrepresented himself as a citizen on a driver's license application.[71]  The Supreme

Court held § 1252(a)(2)(B)(i) barred review of the immigration judge's factual

determinations related to adjustment of status.[72]  The Court focused on the language of

§ 1252(a)(2)(B)(i):

> The provision does not restrict itself to certain kinds of decisions.  Rather, it prohibits review of *any* judgment *regarding* the granting of relief under §1255 and the other enumerated provisions. . . .  Here, "any" means that the provision applies to judgments "'of whatever kind'" under § 1255, not just discretionary judgments or the last-in-time judgment.  Similarly, the use of "regarding" "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject."  Thus, §1252(a)(2)(B)(i) encompasses not just "the granting of relief" but also any judgment *relating* to the granting of relief.  That plainly includes factual findings.[73]

The Court observed that § 1252(a)(2)(D), which preserves review of constitutional

claims and questions of law in the removal context, reinforced its conclusion.[74]  The

Court reasoned that "if Congress made [constitutional and legal] questions an

exception, it must have left *something* within the rule.  The major remaining category is

questions of fact."[75]  Accordingly, the Court concluded "the text and context of

§1252(a)(2)(B)(i) . . . clearly indicate that judicial review of fact determinations is

precluded in the discretionary-relief context."[76]

---

[71] *Patel*, 596 U.S. at 334–35.  Falsely representing oneself to be a citizen renders a person ineligible for adjustment of status.  *See id.* at 333–34.

[72] *Id.* at 338–39, 347.

[73] *Id.* at 338–39 (citations omitted).

[74] *Id.* at 339.

[75] *Id.* (emphasis in original).

[76] *Id.* at 347.

In reaching this conclusion, the Court rejected the petitioner's argument that § 1252(a)(2)(B)(i) only prohibited review of the ultimate grant or denial of relief but left "first-step" eligibility determinations reviewable.[77]  As the Court noted, "§1252(a)(2)(B)(i) does not stop at just the grant or denial of relief; it extends to any judgment 'regarding' that ultimate decision."[78]  Addressing the plaintiffs' concern that its broad interpretation of § 1252(a)(2)(B)(i) would have the "unintended consequence of precluding all review of USCIS denials of discretionary relief,"[79] the Court clarified: "The reviewability of such decisions is not before us, and we do not decide it.  But it is possible that Congress did, in fact, intend to close that door."[80]  And the Court observed that "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief."[81]

Defendants argue the Court's broad construction of § 1252(a)(2)(B)(i) in *Patel* "necessarily leads to a conclusion that [§ 1252(a)(2)(B)(ii)] bars review of USCIS's decision in [Mr.] Ahmad's case."[82]  Mr. Ahmad and Ms. Kergaye, on the other hand,

---

[77] *Id.* at 343–44.

[78] *Id.* at 344.

[79] *Id.* at 345.

[80] *Id.*

[81] *Id.* at 346.

[82] (Mot. 13, Doc. No. 35.)

argue *Patel* does not extend to § 1252(a)(2)(B)(ii), and *Kucana* governs in this context.[83]

The Tenth Circuit has not addressed this issue, and other courts are divided. Some courts have concluded *Patel*'s rationale regarding § 1252(a)(2)(B)(i) applies equally to § 1252(a)(2)(B)(ii)—rendering even preliminary factual determinations by USCIS unreviewable if the ultimate decision is discretionary.[84]  Two district court cases cited by Defendants provide detailed support for this view.  In *Morina v. Mayorkas*,[85] a district court found "no reason why *Patel*'s holding barring review of factual questions as to a party's eligibility for adjustment of status under subclause (i) of § 1252(a)(2)(B) should not apply with equal force to subclause (ii)."[86]  The court based this conclusion on the statutory text, explaining:

> Based on its position and its introductory language, subclause (ii) appears designed to ensure that statutory decisions and actions similar in type to the ones listed in subclause (i) are also barred from judicial review.  Subclause (ii), which comes directly after subclause (i), starts with the phrase "*any other* decision or action."  The phrase "any other" following the enumerated statutory provisions in subclause (i) signifies that it operates as a catchall provision, the purpose of which is to ensure that categories of things similar in type to those specifically enumerated are covered.[87]

---

[83] (*See* Opp'n 5, Doc. No. 41.)

[84] *See, e.g.*, *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024); *Shaiban v. Jaddou*, 97 F.4th 263, 267 (4th Cir. 2024); *Azatullah v. Mayorkas*, No. 1:20-cv-01069, 2023 U.S. Dist. LEXIS 161440, at *12 (S.D.N.Y. Sept. 12, 2023) (unpublished); *Morina v. Mayorkas*, No. 22-cv-02994, 2023 U.S. Dist. LEXIS 374, at *31–32 (S.D.N.Y. Jan. 3, 2023) (unpublished).

[85] 2023 U.S. Dist. LEXIS 374.

[86] *Id.* at *31 (concluding the court lacked jurisdiction to review USCIS's denial of the plaintiff's application for adjustment of status on grounds that he was inadmissible for providing material support to terrorist organizations).

[87] *Id.* at *27–28 (citations omitted).

Because of the catchall nature of subclause (ii), the court found "it would make little

sense to hold that the types of decisions that are insulated from review under (ii) are

narrower than those insulated from review under subclause (i)."[88]

> The *Morina* court also relied on a comparison of the two subclauses:
>
> While subclause (i) states that "no court shall have jurisdiction to review" "any *judgment*," subclause (ii) states that "no court shall have jurisdiction to review" "any other *decision or action*." The words "decision or action" are at least as broad, if not broader, than the word "judgment" in subclause (i).[89]

Finally, the court found subclause (ii)'s explicit reference to "discretion" did not change

the analysis:

> Subclause (ii) states that "no court shall have jurisdiction to review . . . any other decision or action . . . *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security*." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Importantly, provision (ii) does not require the "decision or action" itself be discretionary. It does not, for example, state that "no court shall have jurisdiction to review any other discretionary decision or action." Rather, it "strips courts of the jurisdiction to review decisions that *are statutorily specified to be in the discretion* of the Attorney General or the Secretary of Homeland Security."[90]

The *Morina* court noted "USCIS's decision as to whether Plaintiff materially supported

terrorist activities was not a discretionary decision," but "in making this decision, USCIS

acted under the authority contained in 8 U.S.C. § 1159(b), which provides that the

decision whether to adjust the status of a noncitizen granted asylum resides in the

discretion of the Secretary of Homeland Security and the Attorney General of the United

---

[88] *Id.* at *28–29.

[89] *Id.* at *29 (citation omitted).

[90] *Id.* at *30 (quoting *Patel*, 971 F.3d at 1272).

States."[91]  Concluding the "preliminary eligibility determination" was covered by subclause (ii)'s plain language, the court found the statute barred judicial review.[92]

Applying similar reasoning, the court in *Azatulla v. Mayorkas*[93] concluded, based on *Patel*, that "the plain language of Section 1252(a)(2)(B)(ii) clearly precludes judicial review of discretionary *and* non-discretionary determinations."[94]  The court explained: "Because the decision by USCIS to deny Azatullah a status adjustment was 'in the Secretary's or . . . Attorney General's *discretion'* under Section 1159(b), the court is deprived of jurisdiction to review any associated 'decision or action'—discretionary or otherwise."[95]

This view of § 1252(a)(2)(B)(ii) has since been adopted by the Fourth Circuit in *Shaiban v. Jaddou*,[96] and the Ninth Circuit in *Zia v. Garland*.[97]  In *Shaiban*, the Fourth Circuit concluded *Patel*'s "broad construction" of subclause (i) applied equally to subclause (ii), and barred judicial review of a nondiscretionary decision that was a predicate to denial of discretionary relief.[98]  Likewise, in *Zia*, the Ninth Circuit held that "*Patel*'s interpretation of 'any judgment' in subsection (i) thus equally applies to 'any

---

[91] *Id.* at *30–31.

[92] *Id.* at *31–32.

[93] 2023 U.S. Dist. LEXIS 161440.

[94] *Id.* at *12.

[95] *Id.* at *14.

[96] 97 F.4th 263.

[97] 112 F.4th 1194.

[98] 97 F.4th at 267.

other decision or action' in subsection (ii),"[99] meaning "any underlying eligibility determination made in support of the ultimate discretionary decision is beyond judicial review."[100]

On the other hand, Mr. Ahmad and Ms. Kergaye point to *Vivint, Inc. v. Mayorkas*,[101] in which a court in this district concluded *Patel*'s rationale does not extend to § 1252(a)(2)(B)(ii).[102]  The court found the language in subclause (ii) "differs in an important way" from the language in subclause (i):

> Specifically, § 1252(a)(2)(B)(ii) prohibits judicial review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  In other words, for § 1252(a)(2)(B)(ii) to cover a decision, the decision must be specified to be discretionary.  Section 1252(a)(2)(B)(i) lacks comparable language explicitly limiting its jurisdiction-stripping to discretionary decisions.  Rather, § 1252(a)(2)(B)(i) covers "any judgment regarding the granting of relief under" certain sections, which the [*Patel*] Court held to include factual findings that underlie the decision to grant or deny relief under the listed sections, regardless of whether the determination was discretionary or not.  In contrast, § 1252(a)(2)(B)(ii) explicitly includes a requirement that a decision be discretionary in order for its jurisdiction-stripping provision to apply.[103]

Mr. Ahmad and Ms. Kergaye also cite *Fofana v. Mayorkas*,[104] a District of Minnesota decision in which the court declined to apply *Patel* to § 1252(a)(2)(B)(ii), finding it

---

[99] 112 F.4th at 1200.

[100] *Id.* at 1200–01.

[101] 614 F. Supp. 3d 993 (D. Utah 2022).

[102] *Id.* at 999 n.4.

[103] *Id.* (citations omitted).

[104] No. 18-3163, 2024 U.S. Dist. LEXIS 35955 (D. Minn. Mar. 1, 2024) (unpublished).

retained jurisdiction to review "non-discretionary predicates to discretionary final decisions."[105]

The cases applying *Patel*'s rationale to § 1252(a)(2)(B)(ii) are persuasive.  In light of the Supreme Court's broad interpretation of § 1252(a)(2)(B)(i) in *Patel*, and based on an examination of the statutory text, § 1252(a)(2)(B)(ii) precludes review of nondiscretionary factual determinations underlying USCIS's ultimate waiver determination.

As the *Morina* and *Azatullah* decisions noted, the text of subclause (ii) suggests is it is intended as a catchall provision following subclause (i)—undermining the notion that "the types of decisions that are insulated from review under (ii) are narrower than those insulated from review under subclause (i)."[106]  Likewise, "[t]he words 'decision or action' are at least as broad, if not broader, than the word 'judgment' in subclause (i).[107] Where the Supreme Court in *Patel* determined that § 1252(a)(2)(B)(i) is not textually limited to discretionary determinations, the same is necessarily true of the even broader language in § 1252(a)(2)(B)(ii).[108]  Further, as noted in *Morina* and *Azatullah*,

---

[105] *Id.* at *8.  More recently, the Eleventh Circuit held in an unpublished decision that § 1252(a)(2)(B)(ii) did not preclude review of a nondiscretionary eligibility decision. *Escalante-Ramires v. United States Att'y Gen.*, No. 23-11990, 2024 U.S. App. LEXIS 14462, at *12–13 (11th Cir. June 14, 2024) (unpublished) (addressing the denial of an application for temporary protected status).  But the circuit based this holding on its conclusion that it was required to apply binding pre-*Patel* circuit precedent on this issue, where *Patel*'s holding did not specifically apply to § 1252(a)(2)(B)(ii).  *Id.*

[106] *Morina*, 2023 U.S. Dist. LEXIS 374, at *28–29; *see also Azatullah*, 2023 U.S. Dist. LEXIS 161440, at *12.

[107] *Morina*, 2023 U.S. Dist. LEXIS 374, at *29; *see also Azatullah*, 2023 U.S. Dist. LEXIS 161440, at *12–13.

[108] *See Azatullah*, 2023 U.S. Dist. LEXIS 161440, at *13.

§ 1252(a)(2)(B)(ii) does not expressly require the "decision or action" itself be discretionary to preclude judicial review.[109]  Instead, this provision eliminates jurisdiction over "any other decision or action . . . *the authority for which is specified . . . to be in the discretion* of the Attorney General or the Secretary of Homeland Security."[110]

Here, similar to *Morina* and *Azatulla*, Mr. Ahmad and Ms. Kergaye challenge a nondiscretionary factual determination preceding the waiver decision.  But the ultimate decision whether to waive the foreign residence requirement falls within the discretion of the Secretary of Homeland Security under § 1182(e).[111]  Because the ultimate decision regarding waiver is discretionary, the court is deprived of jurisdiction to review any associated "decision or action"—even the "first step" nondiscretionary factual determination challenged here.

For these reasons, the court lacks jurisdiction to review USCIS's denial of Mr. Ahmad's waiver application under the APA (count 1).  Accordingly, the court need not address Defendants' second argument for dismissal of this claim (that § 1182(e) of the INA provides no meaningful standard by which to review USCIS's decision).

---

[109] *See Morina*, 2023 U.S. Dist. LEXIS 374, at *30; *Azatullah*, 2023 U.S. Dist. LEXIS 161440, at *13–14.

[110] 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

[111] *See* 8 U.S.C. § 1182(e) (providing the Secretary "may waive" the two-year foreign residence requirement).

B.  Claim for "Failure to Provide Reasoned Analysis Describing a Marked Change in Policy" (Count 3)

The court also lacks jurisdiction over Mr. Ahmad's claim for "failure to provide reasoned analysis describing a marked change in policy in the adjudication of I-612 persecution waiver cases" (count 3).[112]

In support of this claim, Mr. Ahmad and Ms. Kergaye allege Mr. Ahmad's case is an "aberration" among the approximately 221 persecution waiver applications filed by their counsel's law firm since 1998.[113]  According to the complaint, only six of these applications were denied at step one—and five were later approved after litigation, with the sixth ultimately approved on other grounds.[114]  Mr. Ahmad and Ms. Kergaye allege the USCIS's issuance of a request for evidence and ultimate denial of Mr. Ahmad's "strong case" represents a "dramatic change in policy" regarding adjudication of J-1 persecution waiver applications.[115]  Mr. Ahmad and Ms. Kergaye claim the denial of Mr. Ahmad's waiver application "without explaining the change in policy and standards violates federal decisional law that mandates such explanations,"[116] citing *Greater Boston Television Corp. v. FCC*.[117]

---

[112] (Compl., Doc. No. 1 at 41 (capitalization removed).)

[113] (*Id.* ¶ 112.)

[114] (*Id.*)

[115] (*Id.* ¶¶ 56, 65.)

[116] (*Id.* ¶ 113.)

[117] 444 F.2d 841 (D.C. Cir. 1970); (Compl. ¶ 111, Doc. No. 1.)

In their motion to dismiss, Defendants assume this claim is brought under § 706(2)(A) of the APA.[118]  This provision requires a reviewing court to hold unlawful or set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[119]  Defendants argue count 3 fails to state a claim under this provision because "[a] discrete agency adjudication does not equate to a programmatic change in agency policies," and because the APA precludes "broad programmatic attacks" couched as challenges to agency action under § 706(2)(A).[120]

In their opposition, Mr. Ahmad and Ms. Kergaye explain count 3 is brought not under § 706(2)(A) but, rather, federal case law—which they assert provides a "heightened standard of review" when an agency changes course without supplying "reasoned analysis."[121]  Specifically, they rely on *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*[122] and *Greater Boston Television Corp. v. FCC.*[123]  Mr. Ahmad and Ms. Kergaye assert they have plausibly alleged USCIS changed its internal policies without providing a reasoned analysis in denying Mr.

---

[118] (*See* Mot. 19–20, Doc. No. 35.)

[119] 5 U.S.C. § 706(2)(A).

[120] (Mot. 19, Doc. No. 35 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S 55, 64 (2004)).)

[121] (Opp'n 17, Doc. No. 41.)

[122] 463 U.S. 29 (1983).

[123] 444 F.2d 841.

Ahmad's application (which they contend is required under *Greater Boston* and *State Farm*).[124]

In *Greater Boston*, the D.C. Circuit held "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored"[125]—and in *State Farm*, the Supreme Court cited *Greater Boston* for this proposition.[126]  But Mr. Ahmad and Ms. Kergaye fail to cite any authority applying the cited cases to facts analogous to this case—or to the immigration context generally.  In *Greater Boston*, the court analyzed an FCC licensing decision,[127] and the *State Farm* Court addressed a challenge under § 706 of the APA to rulemaking by the National Highway Traffic Safety Administration.[128]  And it is not apparent either case recognizes or creates a cause of action separate from the APA, as Mr. Ahmad and Ms. Kergaye seem to assert.

Ultimately, it makes no difference.  Regardless of whether count 3 is brought under the APA or the "federal decisional law" cited by Mr. Ahmad and Ms. Kergaye, the court lacks jurisdiction over this claim.  Although framed as a challenge to a change in USCIS policy, it is evident the claim is merely another request for review of the denial of

---

[124] (Opp'n 17–20, Doc. No. 41.)

[125] 444 F.2d at 852.

[126] 463 U.S. at 57.

[127] *See* 444 F.2d at 844.

[128] *See* 463 U.S. at 33–34 (holding "the agency failed to present an adequate basis and explanation for rescinding [a] passive restraint requirement" in motor vehicle safety standards).

Mr. Ahmad's waiver application.  As such, it falls within the INA's jurisdictional bar under § 1252(a)(2)(B)(ii).

In *Djong v. Mayorkas*,[129] a district court addressed a similar issue.  In that case, the plaintiffs sought review of USCIS's denial of their applications for adjustment of status, claiming USCIS implemented an unlawful policy to presume fraud in all cases in which a visa application contained false information.[130]  The court concluded the purported challenge to USCIS policy was nothing more than a challenge to the denial of the plaintiffs' visa applications—which the court lacked jurisdiction to review.[131]  The court noted the majority of the plaintiffs' requests for relief concerned their own applications, including the request to declare the denial unlawful and to enjoin it.[132]  The court concluded: "These requests make it clear that the true challenge is to USCIS's decision to deny Plaintiffs' applications and the alleged policy's application to Plaintiffs.  Such a decision is clearly within the INA's jurisdictional bars."[133]

Likewise, here, Mr. Ahmad and Ms. Kergaye's requested relief makes clear they are simply challenging the denial of Mr. Ahmad's waiver application.  Mr. Ahmad and Ms. Kergaye seek a declaration that the adjudication of Mr. Ahmad's waiver application was unlawful, his application is meritorious, and he is statutorily eligible for a waiver—

---

[129] No. 24-cv-00475, 2024 U.S. Dist. LEXIS 225311 (D. Colo. Dec. 12, 2024) (unpublished).

[130] *Id.* at *3–4.

[131] *Id.* at *14–15.

[132] *Id.*

[133] *Id.* at *15.

and an order reversing USCIS's denial of his application.[134]  As these requests make clear, at core, Mr. Ahmad and Ms. Kergaye are seeking review of the denial of Mr. Ahmad's waiver application.  Indeed, describing count 3 in their opposition, Mr. Ahmad and Ms. Kergaye assert the court "may *review USCIS' decision* to deny Mr. Ahmad's waiver for a marked change in policy without a reasoned analysis."[135]  But, as explained above, the court may not do this.  Review of this decision is precluded under the jurisdictional bar in § 1252(a)(2)(B)(ii).  The court lacks jurisdiction over this claim.

### C. Due Process Claim (Count 2)

This court also lacks jurisdiction over Mr. Ahmad's constitutional due process claim.  Mr. Ahmad and Ms. Kergaye allege Mr. Ahmad "has a property interest in the application fee that he paid to the Department of Homeland Security," and claim "[t]he Defendants' denial of Mr. Ahmad's waiver application without any rational basis while ignoring and misconstruing evidence violates [his] right to due process of law under the Fifth Amendment to the United States Constitution."[136]

While the INA contains an exception to the jurisdiction-stripping provisions to permit review of constitutional claims, it grants jurisdiction to review such claims exclusively to circuit courts of appeal, and only in removal cases.[137]  Specifically, 8 U.S.C. § 1252(a)(2)(D) provides:

> Nothing in subparagraph [1252(a)(2)](B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review,

---

[134] (Compl., Prayer for Relief, Doc. No. 1 at 43–44.)

[135] (*See* Opp'n 17, Doc. No. 41 (emphasis added).)

[136] (Compl. ¶¶ 108–09, Doc. No. 1.)

[137] *See* 8 U.S.C. § 1252(a)(2)(D)

shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review *filed with an appropriate court of appeals* in accordance with this section.[138]

This is the "sole exception" to the jurisdictional bar of § 1252(a)(2)(B).[139]  But "§ 1252(a)(2)(D) allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal, and a petition for review of a final removal order must be filed in the appropriate circuit court, not a district court."[140] Therefore, "§ 1252(a)(2)(D) does not apply in the district courts,"[141] nor does it restore jurisdiction to review constitutional claims in district court that § 1252(a)(2)(B)(ii) has stripped.[142]

For the reasons described above, § 1252(a)(2)(B)(ii) bars judicial review of USCIS's denial of Mr. Ahmad's waiver application.  The "sole exception" found in § 1252(a)(2)(D) does not apply to Mr. Ahmad's due process claim related to that denial, where his claim is brought in district court and outside removal proceedings. Accordingly, this court lacks jurisdiction over Mr. Ahmad's due process claim.

---

[138] *Id.* (emphasis added).

[139] *Green v. Napolitano*, 627 F.3d 1341, 1346 (10th Cir. 2010).

[140] *Id.* at 1346–47 (internal quotation marks and citations omitted).

[141] *Id.* at 1347 (citing *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 206 n.16 (3d Cir. 2006)).

[142] *See Jilin Pharm. USA*, 447 F.3d at 206 n.16; *see also Chaudhari v. Mayorkas*, No. 2:22-cv-00047, 2023 U.S. Dist. LEXIS 22641, at *14 (D. Utah Feb. 8, 2023) (unpublished) ("As the language of § 1252(a)(2) makes clear, the carveout for 'constitutional claims and questions of law' requires filing a petition for review 'with an appropriate court of appeals.' (quoting 8 U.S.C. § 1252(a)(2)(D))).

D. <u>Declaratory Judgment (Count 4) and Mandamus Relief</u>

Finally, Mr. Ahmad and Ms. Kergaye's declaratory judgment claim and request for mandamus relief merely seek relief based on a review of the denial of Mr. Ahmad's waiver application. Because such review is precluded under § 1252(a)(2)(B)(ii), this court lacks jurisdiction to grant the requested relief.

Mr. Ahmad and Ms. Kergaye bring a claim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 (count 4).[143] But "[i]t is well established that the Declaratory Judgment Act 'enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'"[144] In other words, 28 U.S.C. § 2201 "does not itself confer jurisdiction on a federal court where none otherwise exists."[145] It also "does not create substantive rights."[146]

In their declaratory judgment claim, Mr. Ahmad and Ms. Kergaye merely seek relief in connection with their other claims for review of the denial of Mr. Ahmad's waiver application. For example, Mr. Ahmad and Ms. Kergaye seek declarations that Mr. Ahmad is eligible for a J-1 waiver; "Defendants' adjudication of this waiver application without properly reviewing all of the evidence and without stating a valid reason for the denial is contrary to the statutory standards, regulations, legislative history, congressional intent, and due process of law"; Mr. Ahmad has a property interest in the

---

[143] (Compl. ¶¶ 114–23, Doc. No. 1.)

[144] *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1265 (10th Cir. 2004) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

[145] *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822 (10th Cir. 1981).

[146] *Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008).

application fee and the denial of his application violated his due process rights; and USCIS has a "duty to explain its abrupt change in policy and standards" for adjudicating J-1 persecution waiver applications.[147]  Because § 1252(a)(2)(B)(ii) strips this court of jurisdiction to review the denial of Mr. Ahmad's application, and the Declaratory Judgment Act does not provide a separate basis for jurisdiction or confer substantive rights, this claim must also be dismissed for lack of jurisdiction.

Likewise, Mr. Ahmad and Ms. Kergaye's reference to the Mandamus Act[148] in their complaint is unavailing.  The Mandamus Act provides "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer of employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[149]  But Mr. Ahmad and Ms. Kergaye do not bring a separate cause of action under the Mandamus Act, nor allege any duty owed to them separate from their other claims.[150]  Instead, Mr. Ahmad and Ms. Kergaye cite the Mandamus Act only as a source of subject-matter jurisdiction,[151] and seek mandamus relief only in connection with their other claims for review of the denial of Mr. Ahmad's application (such as an

---

[147] (*See* Compl. ¶¶ 116–17, 120–23, Doc. No. 1.)

[148] 28 U.S.C. § 1361.

[149] *Id.*

[150] The complaint's only mention of the word "duty" is found in Mr. Ahmad and Ms. Kergaye's claim for declaratory relief which states: "This Court should declare that the USCIS has a duty to explain its abrupt change in policy and standards with respect to the adjudication of J-1 persecution waiver applications."  (Compl. ¶ 123, Doc. No. 1.)

[151] (*See id.* ¶ 7.)

order reversing the denial).[152]  Where the underlying claims for review of the denial are

barred by § 1252(a)(2)(B)(ii), mandamus relief based on those claims is unavailable.  A

mere citation to the Mandamus Act cannot restore jurisdiction, where § 1252(a)(2)(B)

expressly precludes jurisdiction "[n]otwithstanding any other provision of law."[153]

## CONCLUSION

For all these reasons, Defendants' motion to dismiss[154] is granted, and this

action is dismissed without prejudice for lack of subject-matter jurisdiction.

DATED this 27th day of March, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[152] (*See id.*, Prayer for Relief ¶ E, Doc. No. 1 at 44 (asking the court to "[o]rder the
Defendants to reverse the denial of the waiver application, issue a favorable
recommendation on the application by generating an I-613, and forward the case to the
State Department Waiver Review Division to seek its recommendation on the waiver
application").)

[153] 8 U.S.C. § 1252(a)(2)(B).

[154] (Doc. No. 35.)